Argued March 17, affirmed in part; reversed in part May 17, 1976

# BUENA DAIRY ASSOCIATES et al, *Appellants,*

*v.*

# STATE DEPARTMENT OF AGRICULTURE, *Respondent.*

## (No. 87059, CA 5172)

549 P2d 689

*Dennis W. Skarstad,* Portland, and *Douglas Millard,* Seattle, Washington, argued the cause for appellants. With them on the briefs were Willner, Bennett, Riggs & Skarstad, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

This is an appeal from an order sustaining a demurrer to plaintiffs' amended complaint.[1] Plaintiffs Buena Dairy Associates and Carlisle Dairy Associates (hereinafter Associates) are dairy producers and holders of marketing rights or quota pursuant to the Milk Audit and Stabilization Act, ORS ch 583. Plaintiff Wages is a proposed transferee of Associates' quota. Defendant is responsible for enforcing and carrying out the provisions of the Act. ORS 583.001. This duty includes providing by order for the transfer of quota among milk producers. ORS 583.515.

The complaint to which defendant demurred contained the following allegations: Associates received advance approval from defendant of a proposed form of lease transfer of their dairy herds and milk quota. Believing that they could dispose of their milk quota, Associates leased their other production facilities. Subsequently, Associates' earlier approved form of quota lease was disapproved. Since Associates had already leased their production facilities, they were not able to meet their production obligations and their annual quota was reduced.

A letter from defendant to Associates' attorneys dated February 23, 1973, was attached to the complaint as an exhibit. According to the letter, defendant felt somewhat responsible for Associates' plight. Consequently, defendant recalculated Associates' quota and allowed Associates 90 days in which to obtain the necessary approval for transfers. The letter read in pertinent part:

"(2) Your clients' adjusted quota established February 1, 1973, shall remain unaffected for a period of 90 days from the date hereof, subject to the following conditions:

"(a) Within such time period, your clients submit,

---

[1] Plaintiffs filed a second amended complaint which varied in no material respects from their amended complaint. Defendant moved to strike it on the ground that it was frivolous. The trial court allowed the motion and dismissed the complaint.

and obtain departmental approval of, applications for transfer of the involved quotas to qualified quota-holding producers, such to be performed in accordance with Oregon regulations governing such transfers;

"(b) Obtain and, at the same time of submitting the data described in (a) above, submit to the department written consents or approvals for any contemplated quota transfers executed by any lien claimants against the quotas and/or herds to which the quotas are attached; and

"(c) Apply for transfer of base under the provisions of federal milk Marketing Order No. 124 (Oregon-Washington Order), which application may be made in the normal manner by submission through the offices of this department for transmission to the federal authority.

"(3) Should the quota transfers be completed in accordance with the above, and within the time period specified the time period necessitated for such transfers will be excluded from the basis for determining the February 1, 1974, quota adjustment:

"(4) Should the quota transfers not be completed within the time period specified, for any reason, the provisions of paragraphs (2) and (3) shall be of no effect.

"The department is available to assist you or your clients in complying with the controlling quota transfer regulations, and in furtherance of the same, copies of transfer documents are herewith enclosed."

Plaintiffs also alleged that pursuant to this letter, Associates made arrangements to transfer their milk quota to other producers, including plaintiff Wages, and that the leases were submitted for approval; that defendant refused to approve these transfers; and that the refusal was not based on proper grounds. Plaintiffs further alleged that because of defendant's disapproval of the transfers, the remaining milk producers in Associates' producer pool received the advantage of a concentration of class 1 milk utilization for which premium prices are applicable.

In count one of their complaint, Associates sought to compel defendant to approve their proposed transfer

of milk quota, or in the alternative to compel defendant to convene a contested case hearing. In count two Associates sought a judgment against other milk producers in Associates' market pool for the amount of benefits and premium prices received by them to which Associates or their transferees allegedly would have been entitled if defendant had approved the quota transfers.

The trial court sustained defendant's demurrer to count one on the ground that the court did not have jurisdiction. It sustained the demurrer to count two on the ground that the count did not state a cause of action. Associates contend that their complaint was adequate as to both counts.

Associates characterize the February 23 letter as a "declaratory ruling or order." They contend that the circuit court therefore had jurisdiction of this case since it reviews "*orders* other than contested cases." ORS 183.484(1). (Emphasis supplied.) ORS 183.410 provides:

> "On petition of any interested person, any agency may in its discretion issue a declaratory ruling with respect to the applicability to any person, property, or state of facts of any rule or statute enforceable by it * * *."

■ The letter did not declare the circumstances under which approval of quota transfers would be granted. To the contrary, it stated that it would be necessary for Associates to receive approval of the transfers for the adjusted quota to remain unchanged, and it clearly contemplated the possibility that the transfers would not be approved. Thus, we hold that the circuit court did not have jurisdiction under ORS 183.484(1), because the letter was not an order—it merely pointed out the procedures necessary to obtain an order.

■ We do find that on another ground the circuit court had jurisdiction to consider count one of Associates' complaint. Associates alleged that they had "exhausted all administrative remedies." As relief,

they sought "in the alternative to compel defendant to convene a contested case hearing to determine the validity of said quota transfers." Taken together, these statements amount to a claim that this was a proper case for a contested case hearing, that Associates had requested a hearing, and that defendant had denied that request. As in *N.W. Envir. Def. v. Air Poll. Auth.,* 16 Or App 638, 519 P2d 1271, Sup Ct *review denied* (1974), the Associates' alternative claim was that defendant's proceedings "*should have been but were not* conducted as a contested case hearing." 16 Or App at 642 (emphasis in original). We held in that case that such a claim should be resolved in the circuit court. 16 Or App at 643; *see also,* ORS 183.484(1).

■ We agree with the circuit court that count two does not state a cause of action. Some benefits may have flowed to the other milk producers, from whom recovery is sought for unjust enrichment, as a result of Associates' failure to obtain quota transfer approval. Assuming *arguendo* that there is some statute or rule that would allow recovery through the defendant against the other producers who were not named as parties in the plaintiffs' suit, there are no circumstances alleged which would make it unjust for those producers to retain their benefit, if any.

Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.